**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAVAN GAYNOR,<br>*Plaintiff*,<br>v.<br>BITCOIN DEPOT, INC.,<br>*Defendant*. | Civil Action No. 25 - 4332 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Javan Gaynor filed this pro se action against Bitcoin Depot, Inc., alleging that the company failed to refund him after he was coerced into depositing funds at one of its Bitcoin kiosks. ECF No. 1-1. Pending before the court is Bitcoin Depot's motion to compel arbitration or, in the alternative, to dismiss for failure to state a claim. ECF No. 6. For the following reasons, the court grants the motion to compel arbitration and stays the case.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are undisputed. *See Dist. No. 1, Pac. Coast. Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 998 F.3d 449, 456 (D.C. Cir. 2021) ("A motion to compel arbitration is decided on a summary judgment standard."). Bitcoin Depot operates kiosks across the United States that allow users to purchase Bitcoin, a type of cryptocurrency, "by depositing cash, which is then sent to a user designated wallet." ECF No. 6-1 ¶ 4. In June 2025, Mr. Gaynor visited a Bitcoin Depot kiosk in Alexandria, Virginia. ECF No. 1-1, at 3; ECF No. 6-1

¶ 6.[1] Mr. Gaynor alleges that individuals impersonating federal law enforcement officers coerced him into withdrawing $16,600 from his bank accounts and depositing the funds into the Bitcoin Depot kiosk. ECF No. 1-1, at 3. The impersonators allegedly "claimed [Mr. Gaynor's] name was linked to a criminal investigation and used threats of arrest to compel immediate cooperation." *Id.* To initiate the Bitcoin transaction, Mr. Gaynor accepted Bitcoin Depot's terms and conditions by selecting "I accept these terms and conditions" on the kiosk. ECF No. 6-1 ¶ 12; *see* ECF No. 6-6, at 2 (metadata showing Mr. Gaynor pressed "Accept"); ECF No. 10, at 2, 6 (Mr. Gaynor's claim that he was coerced into completing the transaction and "did not meaningfully review or understand any arbitration provision at the kiosk"); *see also* ECF No. 6-1 ¶ 11 (describing the process for completing a transaction at a Bitcoin Depot kiosk as a new user); ECF No. 6-3, at 30 (screenshot of terms and conditions page). Among Bitcoin Depot's terms and conditions is an arbitration agreement, which provides:

> 17.1. Dispute Resolution Provisions. The Agreement shall be treated as though it were executed and performed in Atlanta, Georgia and shall be governed by and construed in accordance with the laws of the State of Georgia (without regard to conflict of law principles). The parties hereby agree to arbitrate all claims that may arise under the Agreement. Without limiting the foregoing, should a dispute arise between the parties (including the Covered Parties) including, without limitation, any matter concerning the Bitcoin Depot Offerings, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before the American Arbitration Association ("AAA") in Atlanta, GA, in accordance with the then current Commercial Arbitration rules of the AAA . . . . For claims of Ten Thousand Dollars ($10,000.00) or

[1] When citing ECF Nos. 1-1, 6-2, 6-3, 6-6, and 10-1, the court refers to the CM/ECF-generated numbers at the top of each page rather than any internal pagination.

> less, you can choose whether the arbitration proceeds in person, by telephone or based only on submissions.

ECF No. 6-2, at 34.

After Mr. Gaynor completed the transaction at the Bitcoin Depot kiosk, his financial institution notified him that "he had been coerced into a fraudulent scheme." ECF No. 1-1, at 3. Mr. Gaynor then contacted Bitcoin Depot and the Alexandria Police Department. *Id.* A Bitcoin Depot customer service manager informed Mr. Gaynor that "he would be able to retrieve the funds if the transaction was included in a police report," but, according to Mr. Gaynor, Bitcoin Depot "subsequently denied the possibility of retrieval, despite earlier statements and written correspondence confirming willingness to cooperate with law enforcement." *Id.* In August 2025, Bitcoin Depot responded to outreach from the Office of the Attorney General for the District of Columbia concerning Mr. Gaynor. *See* ECF No. 10-1, at 3. In the letter, Bitcoin Depot explained that it had advised Mr. Gaynor to contact local authorities and that it was "willing to work with Law Enforcement." *Id.* at 4. The company stated that it "has no affiliation with the individuals who scammed Mr. Gaynor" and that it has "language on the face of [its] kiosks that begins with 'ARE YOU BEING SCAMMED?' and goes on to list some common instances of scams." *Id.* Bitcoin Depot also explained that it had reviewed security footage showing Mr. Gaynor using the kiosk and noted that he "did not appear to show signs of distress." *Id.*

In October 2025, Mr. Gaynor filed suit in the Superior Court of the District of Columbia, alleging that Bitcoin Depot's "failure to act reasonably or to halt, flag, or investigate the transactions despite clear indications of fraudulent coercion constitutes negligence and reckless

disregard for consumer protection." ECF No. 1-1, at 3.[2] Mr. Gaynor raises four counts against Bitcoin Depot for "facilitation of fraud / aiding and abetting fraud," negligence, negligent misrepresentation, and civil conspiracy to defraud under Virginia law. *Id.* at 3-5. He seeks at least $16,600 in compensatory damages, $3 million in punitive damages, treble damages, costs, and attorney's fees. *Id.* at 5.

Bitcoin Depot removed the action to this court, ECF Nos. 1, 2 (errata), and in January 2026, it moved to compel arbitration or, in the alternative, to dismiss the complaint for failure to state a claim. ECF No. 6. The court directed Mr. Gaynor to respond, ECF No. 7, and Bitcoin Depot's motion is fully briefed, ECF Nos. 6, 10 (Mr. Gaynor's corrected opposition), 13.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that a provision in a contract requiring the arbitration of disputes related to the contract "shall be valid, irrevocable, and enforceable." *Id.* § 2. The Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). If a party subject to an arbitration agreement attempts to litigate a dispute in federal court, the opposing party may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

As noted, "[a] motion to compel arbitration is decided on a summary judgment standard." *Dist. No. 1, Pac. Coast. Dist.*, 998 F.3d at 456. The court may accordingly grant the motion if

[2] Mr. Gaynor's complaint states the jurisdiction as the "Circuit Court for the City of Alexandria, Virginia," ECF No. 1-1, at 2, but Mr. Gaynor filed the complaint in D.C. Superior Court.

"there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see* Fed. R. Civ. P. 56(a). "The party seeking to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an arbitration agreement." *N-Bar Trade, Inc. v. Amazon.com Servs. LLC*, 807 F. Supp. 3d 11, 17 (D.D.C. 2025). "The burden then shifts to [the non-moving party] to show that there is a genuine issue of material fact as to the making of the agreement." *Id.* (alteration in original) (quoting *Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 136 (D.D.C. 2015)). The court must "compel arbitration if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Mercadante*, 78 F. Supp. 3d at 136 (quoting *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 129 (D.D.C. 2013)).

## III. DISCUSSION

Bitcoin Depot argues that Mr. Gaynor must arbitrate his claims pursuant to the mandatory arbitration clause in its terms and conditions. ECF No. 6, at 5-9. Bitcoin Depot has satisfied its initial burden of showing that the parties entered into an arbitration agreement when Mr. Gaynor selected "I accept these terms and conditions" at the Bitcoin Depot kiosk. *See* ECF No. 6-2, at 34. Mr. Gaynor does not dispute that he accepted Bitcoin Depot's terms and conditions or that the arbitration provision in those terms and conditions covers his claims against the company. *See generally* ECF No. 10. Instead, Mr. Gaynor argues that (1) the contract—that is, the set of terms and conditions he accepted—was formed under duress, and (2) the arbitration clause within the terms and conditions is unconscionable. *Id.* at 2-3.

The Supreme Court has established a bifurcated approach for determining whether courts or arbitrators should decide issues of arbitrability. *See Buckeye Check Cashing, Inc. v. Cardegna*,

546 U.S. 440, 444 (2006). Under this framework, there are two types of challenges to the validity of an arbitration agreement: (1) a challenge "to the contract as a whole . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid," or (2) a challenge "specifically [to] the validity of the agreement to arbitrate." *Id.* The former must be adjudicated by the arbitrator, while the latter is for the court to decide. *Id.* This rule is based on Section 2 of the FAA, which treats arbitration provisions as severable from the rest of a contract. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *see* 9 U.S.C. § 2.

Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contracts." 9 U.S.C. § 2. In determining whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). State law governs these contract defenses. *See Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 93 (D.D.C. 2012). Here, the court concludes that Mr. Gaynor's duress defense must be resolved by an arbitrator and that his unconscionability defense, which is for the court to resolve, fails as a matter of law. Accordingly, it will grant Bitcoin Depot's motion to compel arbitration and stay the case.

### A. Duress

Mr. Gaynor first argues that he accepted Bitcoin Depot's terms and conditions under duress because his "alleged acceptance occurred while" he was "[b]eing told he had a federal arrest warrant," "[b]eing instructed not to hang up," "[b]eing warned not to contact anyone," and "[a]cting under fear of prosecution." ECF No. 10, at 3. These arguments squarely challenge the validity of the terms and conditions as a whole, not just the arbitration provision. *See id.*

("Contracts formed under duress are voidable."). Accordingly, the issue of duress should be decided by an arbitrator, not this court. *See Buckeye*, 546 U.S. at 445-46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *see also Mooneyham v. Bitcoin Depot, Inc.*, No. 24-CV-1774, 2025 WL 641722, at *4 & n.4 (D.S.C. Feb. 27, 2025) (considering a plaintiff's argument that she had accepted Bitcoin Depot's terms and conditions under duress and concluding that the issue was for an arbitrator to decide).

Even if the court were to construe Mr. Gaynor's duress defense as a challenge specifically to the arbitration provision, it would fail. As noted, state law governs any contract defenses, *see Hill*, 865 F. Supp. 2d at 93, and the court must determine which jurisdiction's law to apply. Bitcoin Depot argues that Georgia law governs because the terms and conditions contain a choice-of-law provision stating that Georgia law applies. ECF No. 6, at 7 n.4; *see* ECF No. 6-2, at 34 ("The Agreement shall be treated as though it were executed and performed in Atlanta, Georgia and shall be governed by and construed in accordance with the laws of the State of Georgia (without regard to conflict of law principles)."). Mr. Gaynor does not oppose the application of Georgia law, although he cites cases from this district in support of his arguments. *See* ECF No. 10, at 3. A federal court sitting in diversity jurisdiction applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). District of Columbia courts typically "give effect to contractual choice of laws provisions 'as long as there is some reasonable relationship with the state specified.'" *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 153-54 n.3 (D.D.C. 2008) (quoting *Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980)). Here, there is no dispute that Bitcoin Depot's principal place of business is in Georgia, *see* ECF No. 2-1 ¶ 11, so there is a reasonable relationship with the state, *see, e.g.*, *Ladd*

*v. Chemonics Int'l, Inc.*, 603 F. Supp. 2d 99, 115 n.11 (D.D.C. 2009). Some courts, however, have found that it would be "premature to enforce [a] choice of law provision before deciding whether an agreement exists." *Signature Tech. Sols. v. Incapsulate, LLC*, 58 F. Supp. 3d 72, 80 (D.D.C. 2014) (quoting *Amirmotazedi v. Viacom, Inc.*, 768 F. Supp. 2d 256, 261 n.2 (D.D.C. 2011)). Bitcoin Depot asserts that the analysis of Mr. Gaynor's claims is the same under either Georgia or District of Columbia law, ECF No. 6, at 7 n.4, which Mr. Gaynor does not contest, *see generally* ECF No. 10. The court agrees that the relevant laws do not conflict, so it will apply District of Columbia law to Mr. Gaynor's contract-law defenses. *See Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 714 (D.C. 2013) ("The absence of a true conflict compels the application of District of Columbia law by default.").[3]

Duress is "any wrongful threat of one person by words or other conduct that induces another to enter a transaction under the influence of such fear as precludes him from exercising free will and judgment." *Dyer v. Bilaal*, 983 A.2d 349, 360 (D.C. 2009) (quoting *Sind v. Pollin*, 356 A.2d 653, 656 (D.C. 1976)); *see Hampton Island, LLC v. HAOP, LLC*, 702 S.E.2d 770, 773 (Ga. Ct. App. 2010) (holding that "duress consists of imprisonment, threats, or other acts, by which the free will of the party is restrained and [his] consent induced" (quoting *Cooperative Res. Ctr., Inc. v. Se. Rural Comm'y Assistance Project, Inc.*, 569 S.E.2d 545, 547 (Ga. Ct. App. 2002))). Here, Mr. Gaynor bases his duress defense on non-parties who allegedly impersonated federal law enforcement officers to defraud him. *See* ECF No. 10, at 3. But duress attributable to someone who is not a party to the contract will void the contract "unless the other party to the transaction in good faith and without reason to know of the duress either gives value or relies materially on the

---

[3] The court will include parallel citations to Georgia law where they exist. *See, e.g.*, *Signature Tech. Sols.*, 58 F. Supp. 3d at 80 & n.5.

transaction." Restatement (Second) of Contracts § 175(2); *see Osborne v. Howard Univ. Physicians, Inc.*, 904 A.2d 335, 340 (D.C. 2006) (endorsing the Restatement (Second) of Contracts); *Compris Techs., Inc. v. Techwerks, Inc.*, 618 S.E.2d 664, 672 (Ga. Ct. App. 2005) (holding that duress "must be based on acts or conduct of the *opposing party* which are wrongful or unlawful" (emphasis added) (quoting *Cooperative Res. Ctr., Inc.*, 569 S.E.2d at 547)). Mr. Gaynor does not allege that Bitcoin Depot, the opposing party to the contract, caused his duress, nor does he allege that Bitcoin Depot knew of or consented to the impersonators' acts. *See generally* ECF Nos. 1-1, 10. And Bitcoin Depot materially relied on the parties' contract as it completed the $16,600 Bitcoin transaction. Mr. Gaynor therefore cannot void his contract with Bitcoin Depot based on the duress of the impersonators who allegedly threatened him.

Additionally, Mr. Gaynor fails to plausibly allege that the impersonators' threats to have him arrested left him "no reasonable alternative other than to" accept Bitcoin Depot's terms and conditions. *Osborne*, 904 A.2d at 340; *see* ECF No. 10-1, at 22-33 (screenshots of Mr. Gaynor's communications with the impersonators); *see also Peavy v. Bank S., N.A.*, 474 S.E.2d 690, 693 (Ga. Ct. App. 1996) ("[M]ere threats of criminal prosecution, where neither warrant has been issued nor proceedings commenced, do not constitute duress." (quoting *Bond v. Kidd*, 57 S.E. 944, 945 (Ga. Ct. App. 1907))). And instructing someone "not to hang up" the phone and "warn[ing] [him] not to contact anyone," ECF No. 10, at 3, fall far short of an "improper threat" sufficient to constitute duress, *Osborne*, 904 A.2d at 349; *see* ECF No. 13, at 5 ("At most, [Mr. Gaynor] alleges that he was nervous or fearful about a purported banking or law-enforcement investigation or prosecution."); *cf. Fed. Deposit Ins. Corp. v. Meyer*, 755 F. Supp. 10, 13 (D.D.C. 1991) (reviewing District of Columbia law and concluding that "physical compulsion is the only type of duress that

can render a transaction entirely void"). Accordingly, even assuming the court may decide the issue of duress, Mr. Gaynor's claim fails under District of Columbia and Georgia law.

### B. Unconscionability

Mr. Gaynor contends that the arbitration clause is unconscionable because it requires arbitration in Atlanta, Georgia, contains "[b]road liability disclaimers," and includes a "[c]lass action waiver." ECF No. 10, at 3. These arguments are "directed specifically to the agreement to arbitrate," *Rent-A-Ctr., W., Inc.*, 561 U.S. at 71, and are for the court to decide, *see Mercadante*, 78 F. Supp. 3d at 140 ("If a party challenges the validity of a delegation agreement, the district court 'must consider the challenge before ordering compliance.'" (quoting *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70)).

"A party may avoid enforcement of a contract that is unconscionable because the contract is 'oppressive and plainly one-sided.'" *Doucette v. Neutron Holdings, Inc.*, 288 A.3d 339, 342-43 (D.C. 2023) (quoting *Simon v. Smith*, 273 A.3d 321, 331 (D.C. 2022)); *see Innovative Images, LLC v. Summerville*, 848 S.E.2d 75, 83 (Ga. 2020) (holding that an unconscionable contract is "one that no sane man not acting under a delusion would make and that no honest man would take advantage of, one that is abhorrent to good morals and conscience, and one where one of the parties takes a fraudulent advantage of another" (internal quotation marks omitted)). District of Columbia and Georgia law recognize both procedural and substantive unconscionability. *See Urban Invs., Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983); *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 773 (Ga. 1996). "A contract is unconscionable if there is 'an absence of meaningful choice on the part of one of the parties' (procedural unconscionability) and 'the contractual terms are unreasonably favorable to the other party' (substantive unconscionability)." *Doucette*, 288 A.3d at 342 (quoting *Simon*, 273 A.3d at 331); *see NEC Techs., Inc.*, 478 S.E.2d at 771-72. Unless a contract is

substantively unconscionable, "it will not be rendered unenforceable because of procedural unconscionability, except 'in an egregious situation.'" *Associated Ests. LLC v. BankAtlantic*, 164 A.3d 932, 943 (D.C. 2017) (quoting *Urban Invs., Inc.*, 464 A.2d at 99); *see Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1194 (11th Cir. 2023) (noting that the "unconscionability standard is hard to satisfy under Georgia law").

Here, Mr. Gaynor's arguments directed at the arbitration provision sound in substantive unconscionability. First, Mr. Gaynor asserts that "[a]rbitration [is] required in Atlanta, Georgia." ECF No. 10, at 3. This requirement does not clear the high hurdle of establishing substantive unconscionability. While Mr. Gaynor asserts that "[c]ompelling out-of-state arbitration [in Georgia] would impose severe hardship," *id.* at 4, he alleges no facts describing that hardship. Without any information about the costs or inconveniences arbitration would entail, the court cannot conclude that the arbitration forum is "unreasonably favorable to the other party." *Simon*, 273 A.3d at 331; *see Patterson v. Walker-Thomas Furniture Co.*, 277 A.2d 111, 114 (D.C. 1971) ("An unsupported conclusory allegation . . . that a contract is unenforceable as unconscionable is not enough."); *Goodrich v. Adtrav Travel Mgt., Inc.*, No. 15-CV-899, 2016 WL 4074082, at *3 (D.D.C. Feb. 1, 2016) (concluding that an arbitration agreement was not substantively unconscionable even if travel costs to the arbitration forum would impose a "substantial financial burden" on the plaintiff (internal quotation marks omitted)); *Cash in Advance of Fla. v. Jolley*, 612 S.E.2d 101, 103 (Ga. App. Ct. 2005) (noting that "the mere possibility that [a plaintiff] could be

saddled with prohibitive costs is too speculative to justify the invalidation of [an arbitration] agreement").[4]

Next, the court understands Mr. Gaynor's argument about "[b]road liability disclaimers" to challenge the scope of the arbitration provision. ECF No. 10, at 3. Again, Mr. Gaynor fails to explain why the provision is overly broad. In any event, Bitcoin Depot's arbitration agreement applies to "all claims that may arise under the [terms and conditions]," ECF No. 6-2, at 34, which is no broader than a typical arbitration clause, *see, e.g.*, *Goodrich*, 2016 WL 4074082, at *1-3 (enforcing an arbitration agreement that applied to "any controversy or claim arising out of or relating to [the parties'] employment relationship" (internal quotation marks omitted)); *Doucette*, 288 A.3d at 341, 343 (holding that an arbitration agreement was not unconscionable where "both parties [were] equally obligated to arbitrate their claims" relating to the rental of a scooter); *Losey v. Prieto*, 739 S.E.2d 834, 836 (Ga. 2013) (affirming the lower court's order compelling arbitration where the parties had agreed to "arbitrate any dispute arising out of the agreement"); *see also Bd. of Trs. of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 1335, 1343 (11th Cir. 2010) (holding that there is "nothing unusual about an arbitration clause . . . that requires arbitration of all disputes between the parties to the agreement").

---

[4] Bitcoin Depot also points out that the arbitration provision allows claimants seeking $10,000 or less the option to arbitrate by telephone or based only on submissions. ECF No. 13, at 8; *see* ECF No. 6-2, at 34. But Mr. Gaynor's claim would presumably exceed $10,000 since he seeks $16,600 in compensatory damages. ECF No. 1-1, at 5. Bitcoin Depot's arbitration provision does provide that the company may make a settlement offer before proceeding with arbitration, and if the arbitrator awards relief greater than Bitcoin Depot's settlement offer, the company "will pay all filing, administration and arbitrator fees associated with the arbitration," as well as reasonable attorney's fees. ECF No. 6-2, at 34-35. These factors weigh against a finding that the terms of the arbitration provision are so one-sided as to be unconscionable.

Finally, Mr. Gaynor objects to the "[c]lass action waiver" in the arbitration provision. ECF No. 10, at 3. Class action waivers in arbitration agreements are generally enforceable under the FAA. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233-38 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-44 (2011). And Mr. Gaynor neither brings a class action suit nor alleges facts suggesting that the class action waiver precludes recovery. *See* ECF No. 6-2, at 35 (providing that the class action waiver "does not constitute a waiver of any of [Mr. Gaynor's] rights or remedies to pursue a claim individually and not as a class action in binding arbitration"). Accordingly, the class action waiver does not render the arbitration agreement substantively unconscionable.[5]

### C. A Stay Is Warranted

Mr. Gaynor does not dispute that his claims against Bitcoin Depot—for facilitation of fraud or aiding and abetting fraud, negligence, negligent misrepresentation, and civil conspiracy to defraud—"fall within the broad coverage" of the arbitration agreement. *Gonzales v. GrubHub Holdings, Inc.*, No. 23-CV-1650, 2023 WL 6037126, at *2 (D.D.C. Sep. 14, 2023), *aff'd*, No. 23-7123, 2024 WL 1222048 (D.C. Cir. Mar. 21, 2024); *see generally* ECF No. 10; ECF No. 6-2, at 34 (applying to "all claims that may arise under the Agreement"). Accordingly, having

[5] Mr. Gaynor also argues that the arbitration clause is unconscionable because it was "[p]resented at a kiosk during [a] high-pressure transaction," ECF No. 10, at 3, but this is a challenge to the terms and conditions as a whole, not to the arbitration clause specifically. Accordingly, like his duress defense, this is a claim for the arbitrator to decide. *See Buckeye*, 546 U.S. at 445-46. And to the extent that Mr. Gaynor's claim could be construed as a procedural unconscionability challenge directed solely at the arbitration clause, Mr. Gaynor fails to establish "an absence of meaningful choice" in accepting the terms and conditions. *Doucette*, 288 A.3d at 342 (quoting *Smith*, 273 A.3d at 331); *see Innovative Images, LLC*, 848 S.E.2d at 83 (explaining that "the complaining party . . . bears the burden of proving that [he] was essentially defrauded in entering the agreement").

concluded that Mr. Gaynor signed a valid and enforceable agreement to arbitrate claims against Bitcoin Depot, the court must grant Bitcoin Depot's motion to compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (explaining that the FAA "leaves no place for the exercise of discretion by a district court[] but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

Bitcoin Depot has requested that the court stay this case pending arbitration. ECF No. 6, at 9. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [Section] 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see Bangura v. Vita Surgical Grp., LLC*, No. 23-CV-2987, 2026 WL 61259, at *8 n.6 (D.D.C. Jan. 8, 2026) (staying case pending arbitration instead of dismissing the suit). Accordingly, the court will stay the case pending arbitration.[6]

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Bitcoin Depot's Motion to Compel Arbitration or, in the Alternative, to Dismiss, ECF No. 6, is **GRANTED** to the extent that the court compels arbitration. It is further **ORDERED** that this matter is **STAYED** pending the completion

[6] In light of its determinations, the court denies Mr. Gaynor's request for "limited discovery" related to the "making of [the] arbitration agreement." ECF No. 10, at 4. Mr. Gaynor's duress arguments are delegated to the arbitrator as a matter of law, and discovery regarding "[s]urveillance footage," "[f]raud policies," "[s]cam detection protocols," "[t]ransaction monitoring," and "[p]rior complaints" is unnecessary to resolve his unconscionability claim. *Id.* Similarly, the court need not consider Bitcoin Depot's argument that Mr. Gaynor's complaint should be dismissed for failure to state a claim. ECF No. 6, at 9-18.

of arbitration and the parties shall file a joint status report on or before February 16, 2027, updating the court on the status of arbitration.

**SO ORDERED.**

LOREN L. ALIKHAN
United States District Judge

Date: August 13, 2026